UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DOUGLAS G. MACHALK,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF CEDAR LAKE, INDIANA, and BOARD OF SAFETY OF TOWN OF CEDAR LAKE, INDIANA, by and through its President Charlie Kaper,<br><br>Defendants. | CAUSE NO.: 2:23-CV-63-TLS-AZ |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 33] filed by Defendants Town of Cedar Lake, Indiana, and the Board of Safety of Town of Cedar Lake, Indiana, by and through its President Charlie Kaper, on January 31, 2024. Plaintiff Douglas G. Machalk filed a response, ECF No. 37, and the Defendants filed a reply, ECF No. 39. For the following reasons, the Court grants in part and denies in part the motion to dismiss.

**LEGAL STANDARD**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d

736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (cleaned up).

## PROCEDURAL AND FACTUAL BACKGROUND

On January 17, 2024, the Plaintiff filed a Second Amended Complaint [ECF No. 30] against the Defendants under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. The following factual allegations are taken from the Second Amended Complaint.

The Plaintiff has been an officer with the Cedar Lake Police Department since July 3, 2009, and has served the Town of Cedar Lake consistently and faithfully as an officer in good standing. Second Am. Compl. ¶¶ 5, 8, ECF No. 30. In 2011, the Plaintiff testified as a witness in an internal investigation involving then co-worker Officer Timothy Kilgore, who has since been promoted to ranks as high as Commander and Sergeant resulting in supervisory authority over the Plaintiff. *Id.* ¶¶ 10, 11. After the Plaintiff's testimony, Kilgore began a pattern of harassment and retaliation against the Plaintiff. *Id.* ¶¶ 12, 14. The Chief of Police summarily dismissed the Plaintiff's attempt to make a complaint regarding Kilgore's conduct. *Id.* ¶ 17. In January 2021, Kilgore questioned the Plaintiff's actions regarding a department-owned vehicle. *Id.* ¶ 18. Near that time, the Plaintiff was also reprimanded for his participation in a conversation in which two

younger officers were questioning Kilgore's participation in an investigation involving the child of Kilgore's ex-girlfriend. *Id.* ¶ 19.

In January 2021, regarding a different matter, the Plaintiff was notified of pending disciplinary charges against him with a recommended two-day suspension and demotion from his then-current rank of Corporal. *Id.* ¶ 20. On January 25, 2021, several members of the Department's administration discussed the recommended action with the Plaintiff. *Id.* ¶ 21. The same day, the Plaintiff was advised by letter that he would be suspended for two days and recommended for demotion. *Id.* ¶ 24; *see also* Def. Ex. A, p. 6, ECF No. 34-1 (showing the correct date of the letter as January 25, 2021).[1] On January 27, 2021, "[the Plaintiff] by and through Atty. Christopher Cooper, submitted a written request for hearing before the [Board of Safety] to contest the disciplinary actions." Second Am. Compl. ¶ 22. The Board of Safety failed or refused to provide him the opportunity for a hearing concerning the demotion notwithstanding his request for a hearing in accordance with Indiana Code § 36-8-3-4(c), which provides that a member of a town police department must be offered a hearing before the Board of Safety prior to being demoted. *Id.* ¶¶ 23, 24. The Plaintiff was then demoted from the rank of Corporal to the rank of Patrolman, which resulted in a loss of pay, loss of time in grade, and lost opportunities for overtime. *Id.* ¶ 27.

The Plaintiff was "advised that he was not entitled to [a] hearing due to his probationary status at the time the determination was made." *Id.* ¶ 25. However, the Plaintiff believes that the length of his probationary status and/or the timing of the decision to demote him were manipulated by members of the Department administration as a further retaliatory act intended to prevent him from receiving due process to which he was otherwise entitled. *Id.* At that time, the Plaintiff had been with the Department approximately eleven and a half years. *Id.* ¶ 26. He alleges that "[h]is probationary status had been established as a result of his promotion to the

---

[1] The Court can consider the letter attached to the Defendants' Motion to Dismiss because the letter is referenced in and central to the Second Amended Complaint. *See McCready*, 453 F.3d at 891.

3

rank of Corporal, and, even if legitimate, should not have resulted in a denial of his statutory due process." *Id.*

In Count I, the Plaintiff alleges violations of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution brought pursuant to 42 U.S.C. § 1983 and under Indiana Code § 36-8-3-4. *Id.* ¶ 38. He alleges that he was demoted without the due process protections guaranteed by these laws. *Id.* ¶ 37.

In Count II, the Plaintiff brings a Title VII retaliation claim for engaging in protected speech. *Id.* ¶ 44.[2] The Plaintiff alleges that he has been harassed and subjected to adverse employment actions motivated by Kilgore's retaliatory animus, which was supported by the Town and the Board of Safety. *Id.* ¶¶ 39–41. The three instances of allegedly protected speech are the Plaintiff's testimony against Kilgore in the investigatory proceeding, his questioning and complaining to superiors regarding Kilgore's unfair treatment of him, and his discussion with other officers of a legitimate conflict of interest involving Kilgore. *Id.* ¶ 43.

## ANALYSIS

The Defendants seek dismissal for failure to state a claim under Rule 12(b)(6) of both the § 1983 Fourteenth Amendment due process claim and the Title VII retaliation claim.

**A.    Section 1983 Fourteenth Amendment Due Process Claim**

Pursuant to 42 U.S.C. § 1983, the Plaintiff alleges in Count I that the Defendants violated his Fourteenth Amendment due process rights by demoting him from the rank of Corporal without a hearing pursuant to Indiana Code § 36-8-3-4(c) after he requested one.[3]

---

[2] Although Count II references "constitutionally protected speech" several times, neither the Second Amended Complaint nor the response brief references a First Amendment retaliation claim.

[3] The Court grants the Defendants' motion to dismiss this claim to the extent it is brought under the Fifth Amendment, *see* Second Am. Compl. ¶ 38, because the Plaintiff has named no federal official as a defendant. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

4

Section 1983 provides, in relevant part, that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that the defendant caused the deprivation of a federal constitutional right and that the defendant acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

To bring a Fourteenth Amendment procedural due process claim, a plaintiff must have a constitutionally protected property interest of which he has been deprived without due process of law. *Perry v. Sindermann*, 408 U.S. 593, 599 (1972); *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005); U.S. Const. Amend XIV, § 1 (prohibiting states from "depriv[ing] any person of life, liberty, or property, without due process of law"). Thus, a plaintiff must allege that (1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without the adequate protection of due process of law. *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). The Defendants move to dismiss on the first element, arguing that the Plaintiff did not have a constitutionally protected property interest in his Corporal rank due to his probationary status at the time of the demotion such that due process was not required.[4]

"Property interests . . . are not created by the Constitution" but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577

---

[4] In his response brief, the Plaintiff contends that the Defendants' motion is improperly based on affirmative defenses. However, the Plaintiff does not identify any such affirmative defense, and the Court does not discern any. Rather, the Defendants argue that the Plaintiff has not alleged a constitutionally protected property interest, an element of the Plaintiff's due process claim.

5

(1972); *see Frey Corp. v. City of Peoria*, 735 F.3d 505, 509–10 (7th Cir. 2013). A plaintiff "must have more than an abstract need or desire [for a benefit], and more than a unilateral expectation of it. Instead, the person must have a legitimate claim of entitled to it." *Lukaszczyk v. Cook County*, 47 F.4th 587, 604–05 (7th Cir. 2022) (cleaned up) (quoting *Roth*, 408 U.S. at 577). A constitutionally protected property interest arises "[w]hen government gives its employees assurances of continued employment." *Gorman v. Robinson*, 977 F.2d 350, 356–57 (7th Cir. 1992) (citations omitted). In the employment context, such a property interest "can arise from a statute, regulation, municipal ordinance, or an express or implied contract." *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607–08 (7th Cir. 2014). "[T]he sufficiency of the claim of entitlement must be determined by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976).

"In order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion—as can be found, for example, in a requirement that employees be fired only 'for cause.'" *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989); *see 145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 768–69 (7th Cir. 2021) (citing cases). "If a statute or regulation merely delimits what procedures must be followed before an employee is fired, then it does not contain the requisite substantive procedure." *Cain*, 879 F.2d at 1426 (citing *Bishop*, 426 U.S. at 347; *Roth*, 408 U.S. at 578); *see Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018) ("For example, a government promise that an employee can be fired only for good cause creates a substantive property right in secure employment, whether or not the government provides procedures to enforce that right." (citing *Swarthout v. Cooke*, 562 U.S. 216, 221–22 (2011))). "In other words,

the federal Constitution does not enforce compliance with state procedural rules." *Manley*, 889 F.3d at 893 (citing *Swarthout*, 562 U.S. at 221–22).

Here, the Plaintiff cites Indiana Code § 36-8-3-4 in support of his due process claim, arguing that he was a member of the police department entitled to a hearing before being demoted. Relevant here, section 4 "applies to all . . . towns . . . that have full-time, paid police . . . . departments." Ind. Code § 36-8-3-4(a)(1). Regarding demotion, the statute provides:

> (b) Except as provided in subsection (m),[5] *a member of the police . . . department* holds office or *grade* until the member is dismissed or *demoted* by the safety board. Except as provided in subsection (n),[6] *a member* may be *disciplined by demotion*, dismissal, reprimand, forfeiture, or suspension *upon either*:
>     (1) conviction in any court of any crime; *or*
>     (2) a finding and decision of the safety board that the member has been or is guilty of any one (1) or more of the following:
>         (A) Neglect of duty.
>         (B) A violation of rules.
>         (C) Neglect or disobedience of orders.
>         (D) Incapacity.
>         (E) Absence without leave.
>         (F) Immoral conduct.
>         (G) Conduct injurious to the public peace or welfare.
>         (H) Conduct unbecoming an officer.
>         (I) Another breach of discipline.
> . . .
> (c) Before *a member of a police . . . department* may be suspended in excess of five (5) days without pay, *demoted*, or dismissed, the safety board *shall offer the member an opportunity for a hearing*.
> . . . .

Ind. Code § 36-8-3-4(b), (c) (emphasis added). Subsection (c) then addresses the requirements for requesting the hearing and for written notice. *Id.* § 36-8-3-4(c).

---

[5] Subsection (m) addresses demotion of a member who "holds an upper level policy making position," Ind. Code § 36-8-3-4(m), which is defined as "the police chief" and the "position held by members of the police department . . . in . . . the next rank and pay grade immediately below the chief" in a police department with more than ten but less than fifty-one members, Ind. Code § 36-8-1-12.
[6] Indiana Code § 36-8-3-4(n) addresses a "member subject to criminal charges."

7

Thus, § 36-8-3-4(c) delimits the procedural guarantee of being offered a hearing that is afforded a member of the police department before being demoted. By itself, this procedural protection is insufficient to bestow a protected property interest. *See Cain*, 879 F.2d at 1426. However, § 36-8-3-4(b) sets out the substantive criteria limiting the Board of Safety's discretion in taking adverse employment actions, including demotion, and courts have consistently held that § 36-8-3-4(b) confers a protected property interest in employment on police officers. *See City of Mishawaka v. Stewart*, 310 N.E.2d 65, 68 (Ind. 1974) (holding "that the tenure rights of policemen . . . are legally protected rights" with the same procedural protections afforded other property rights); *Keith v. Town of Long Beach*, 536 N.E.2d 552, 554 (Ind. Ct. App. 1989) (quoting *Stewart*, 310 N.E.2d at 68); *Bailey v. City of Lawrence*, 972 F.2d 1447, 1449 (7th Cir. 1992) (citing *Parrett v. City of Connersville*, 737 F.2d 690, 693–94 (7th Cir. 1984)); *State ex rel. Miecznikowski v. City of Hammond*, 448 N.E.2d 1239, 1243–44 (Ind. Ct. App. 1983) (explaining that Indiana Code § 18-1-11-3, the predecessor to Indiana Code § 36-8-3-4, "created a legitimate claim of entitlement to continue in that rank"); *see also Castetter v. Lawrence Township*, 959 N.E.2d 837, 844 (Ind. Ct. App. 2011) (holding that the merit commission statute, Indiana Code § 36-8-3.5-17, "creates an entitlement to rank, and that members of the department may not be demoted without due process, subject to the exception we discuss below"); *Marvin v. King*, 734 F. Supp. 346, 352–53, 354 (S.D. Ind. 1990) (applying the similar merit commission regulation that "if the 'conduct or capacity of the probationer is found not to be satisfactory, which fact shall be determined by the commission, the probationer shall have the right of hearing'" and finding that "[t]he limitation on the Commission's discretion . . . is precisely the type of limit on discretion that provides the basis for a property interest").

While the Plaintiff alleges in the Second Amended Complaint that there are questions of fact regarding the length of any probationary status,[7] he also contends that Indiana Code § 36-8-3-4 provided him with a protected property interest as a member of the police department regardless of any probationary status. Thus, the dispositive issue on this motion to dismiss is whether § 36-8-3-4 provided the Plaintiff with a protected property interest in his rank of Corporal if he held the rank on a probationary basis at the time he was demoted. To answer the question, the Court must consider the statutes, regulations, town policies, or contracts governing the Plaintiff's probationary status to determine whether they contain a substantive limit on the Board of Safety's discretion in demoting him. *See Marvin*, 734 F. Supp. at 355–56 ("The case law in this area supports the conclusion that probationers have a property interest when a statute or regulation substantively limits the state's discretion in altering their probationary status."). For the following reasons, the Court finds that, on the allegations and law currently before the Court, the Plaintiff has alleged sufficient facts to plausibly infer he had a protected property interest in his rank at the time of his demotion and that the Defendants have not met their burden on this motion to dismiss of clearly showing the Plaintiff did not have a protected property interest in his rank held during a probationary period. *See Gunn*, 968 F.3d at 806.

The Court begins with the text of the statute. Sections 36-8-3-4(b) and (c) apply to a "member of the police department," which is defined as a "police officer appointed to the department." Ind. Code § 36-8-1-9(a). The Second Amended Complaint alleges that the Plaintiff

---

[7] To the extent the Plaintiff alleges new facts or claims in his response brief regarding his probationary status, the Court declines to construe the allegations as a constructive motion to amend because those allegations are to the resolution of this motion. *See Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023) (holding "that district courts retain discretion to interpret new factual allegations or claims presented in a plaintiff's briefs as a constructive motion to amend"). Any amendment should be sought by filing a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15 and Northern District of Indiana Local Rule 15-1.

had been employed as an officer of the Cedar Lake Police Department since 2009. Thus, the Plaintiff was a "member of the police department" to whom § 36-8-3-4 applied. Section 36-8-3-4(b) provides that a "member of the police . . . department holds . . . grade until . . . demoted by the safety board" without reference to whether the grade is held during a probationary period. Similarly, § 36-8-3-4(c) provides that the "safety board shall offer the member an opportunity for a hearing" before the member may be "demoted" without reference to whether the member holds the grade during a probationary period. In other words, the text of § 36-8-3-4 itself does not carve out any exception for probationary status.[8]

The Defendants have not identified any statute, regulation, town ordinance, or written contract establishing a probationary period for a police officer who obtains a new rank with the Cedar Lake Police Department, such as the Plaintiff's promotion to the rank of Corporal. As a result, the Court cannot review the contents of the relevant provision for substantive criteria to

---

[8] However, Indiana Code § 36-8-9-7, which "applies to all towns," *see* Ind. Code § 36-8-9-1, establishes "probationary appointments":
> (a) The board may provide that all appointments to the police department are probationary for a period not to exceed one (1) year.
> (b) *If the board finds*, upon the recommendation of the chief of the department during the probationary period, *that the conduct or capacity of a member is not satisfactory*, the board shall notify the member in writing that the member is being suspended or that the member will not receive a permanent appointment.
> (c) If a member is notified that the member will not receive a permanent appointment, *the member's employment immediately ceases*. Otherwise, at the expiration of the probationary period, the member is considered regularly employed.

Ind. Code § 36-8-9-7 (emphasis added); *see also* Ind. Code § 36-8-4-12 (establishing the same "probationary appointments" for cities). In this case, no party cites this provision, argues that it applies to the Plaintiff, or contends that it applies to a regularly employed member of a police department holding a new rank during a probationary period.

In *Pruitt v. City of Lake Station*, the Indiana Court of Appeals held that the "probationary appointment" established in § 36-8-4-12 applies only to a newly hired officer and did not apply to the plaintiff, a fourteen-year veteran of the department on disciplinary probation. 685 N.E.23d 735 (Ind Ct. App. 1997). However, the Indiana Supreme Court granted transfer, vacating the decision. *Pruitt v. City of Lake Station*, 698 N.E.2d 1191 (Ind. 1998) (May 1, 1998) (Table). The parties then settled, and the appeal was dismissed at moot, with the Supreme Court ordering that the appellate opinion remain vacated pursuant to Appellate Rule 11(B)(3) (currently Ind. App. R. 58(A)). *Pruitt v. City of Lake Station*, 695 N.E.2d 123 (Ind. 1998) (June 17, 1998).

determine what effect, if any, such a probationary period had on the Plaintiff's property interest in his rank conferred by § 36-8-3-4. For example, a provision may substantively limit the Board of Safety's discretion in altering the probationary status of a new rank by requiring that the demotion be "for cause." Such a provision may confer a protected property interest in the rank during the probationary period. Or a provision may explicitly provide that an officer may be demoted from a rank held during a probationary period at the discretion of the Board for any reason with no right to a hearing, resulting in no protected property interest. As argued by the Plaintiff, discovery is necessary to determine the terms of the Plaintiff's probationary status.

The Defendants cite *Untch v. Chaddock*, 520 N.E.2d 118 (Ind. Ct. App. 1988), to argue that the Plaintiff did not have a protected property interest in his new rank during the probationary period. However, *Untch*, which has not been cited by any court, is distinguishable. In *Untch*, the issue on appeal was whether three City of Portage police officers, who held their new ranks during a probationary period, were entitled to notice and an opportunity to be heard before the department eliminated the ranks to which they had been promoted. *Id.* at 119. Without citing Indiana Code § 36-8-3-4 or any specific terms governing the officers' probationary status, the Court of Appeals stated that "[a]bsent any specific rule, regulation, or statute to the contrary, a probationary employee does not have a vested right to continued employment." *Id.* (citing *Gansert v. Meeks*, 384 N.E.2d 1140 (Ind. Ct. App. 1979)).

In support, the court cited *Gansert*, 384 N.E.2d 1140, with the parenthetical description: "probationary police officer failed to acquire protected property interest in his job so as to be entitled to a hearing and appeal of his dismissal." *Untch*, 520 N.E.2d at 119. However, the plaintiff in *Gansert* was a county police officer—not a city police officer like the three officers in *Untch*—during a probationary first year of employment. *See Gansert*, 384 N.E.2d at 1141. The

statute applicable to county police officers provided due process rights to a county police officer only "after his probationary period," *id.* at 1142, and the Allen County Police Department Rules provided that county police officers serve a one-year probationary term, "that, if the Sheriff determines that a probationer's conduct or capacity is not satisfactory, then the Sheriff shall notify the probationer that he will not receive a permanent appointment," and that the Sheriff's determination is not subject to hearing or appeal, *id.* at 1142–43.[9] As a result, the Indiana Court of Appeals in *Gansert* found that the plaintiff did not have a protected property interest as a probationary county police officer, noting that the "Merit Board Rule clearly distinguished between the treatment of probationary and non-probationary policemen." *Id.* at 1143 (applying the property interest analysis set forth in *Roth*, 408 U.S. 564). The court in *Untch* did not acknowledge that *Gansert* concerned a county police officer or explain how the property interest analysis in *Gansert* based on a statute establishing an initial one-year probationary period of employment for county police officers applied to tenured city police officers in *Untch* who were demoted while holding a new rank during a probationary period.

---

[9] At the time, Indiana Code § 17-3-14-6 (1971) provided that "[a]ll county policemen appointed to the department under this chapter . . . shall be probationers and on probation for a period of one (1) year from the date of appointment." *Gansert*, 384 N.E.2d at 1142. Indiana Code § 17-3-14-7 (1971) provided, in relevant part, that "[n]o county policeman shall be discharged, demoted, or temporarily suspended because of political affiliation, nor shall any county policeman be discharged, demoted, or temporarily suspended after his probationary period, except as provided in this act," and the act included a "for cause" requirement for adverse employment actions. *Id.* The county merit board rules provided that "[e]very appointment to the police department shall be for a probationary period of one (1) year of actual service" and that "[i]f at any time during the probationary period the conduct or capacity of the probationer is found not to be satisfactory, which fact shall be determined by the Sheriff, without hearing and right to appeal, the probationer shall be notified in writing by the Sheriff that he will not receive a permanent appointment. . . ." *Id.* (emphasis added) (quoting Merit Board Rule § D, ¶ 7).
  The current version of the statute, which was in effect at the time *Untch* was decided, includes similar provisions. *See* Ind. Code §§ 36-8-10-10 and 36-8-10-11; *McKinney v. Off. of the Sheriff of Whitley Cnty.*, 866 F.3d 803, 805 (7th Cir. 2017) ("The probationary period is intended to ensure that new officers are capable of performing their duties before they benefit from state law that requires good cause for firing and provides extensive procedural protections." (citing Ind. Code § 36-8-10-11)).

12

The court in *Untch* also considered whether an "interest has vested" to determine "whether an employee has a legitimate claim of entitlement." 520 N.E.2d at 119. However, none of the cited cases addressed whether the substantive provisions of a statute, regulation, rule, or contract conferred a property interest during a probationary period. *See id.* (citing *Foley v. Consol. City of Indianapolis*, 421 N.E.2d 1160 (1981) (citing *Martin v. Simplimatic Eng'g Corp.*, 390 N.E.2d 235, 237 (Ind. Ct. App. 1979); quoting *Parr v. Paynter*, 137 N.E. 70, 71 (Ind. Ct. App. (1922))).[10] Thus, any general rule by the *Untch* court that a probationary employee does not have a vested right to continued employment is not persuasive. Rather, as directed by *Roth*, this Court must consider the specific statutes, regulations, rules, and contracts governing the Plaintiff's employment, including any probationary status, to determine whether he had a protected property interest in his new rank during a probationary period. *See Marvin*, 734 F. Supp. at 355–56 (considering the existence of a property interest based on whether a statute or regulation substantively limited the state's discretion in altering the probationary status); *Gansert*, 384 N.E.2d at 1143–44 (considering the applicable statutes and merit rules to find no protected property interest in the plaintiff's probationary employment).

In his response brief, the Plaintiff cites *Morris v. City of Evansville*, 281 N.E.2d 910 (Ind. Ct. App. 1972), to argue that Indiana Code § 36-8-3-4 provides him with a protected property interest in his rank during a probationary period. In *Morris*, the plaintiff, a probationary fireman in the first year of his employment with the City of Evansville, was terminated without a hearing

---

[10] The court in *Foley* found that the plaintiff police officers, who claimed an entitlement to an increase in pay under a city-initiated college incentive pay program, did not have a vested contract right to the pay increase because the city was free to establish, revise, or revoke the program pursuant to the statutory right to fix and determine wages and benefits. 421 N.E.2d at 1161, 1166–68. The two cases cited by *Foley* addressed whether a plaintiff's statutory right had vested before the applicable statute was repealed. *See Martin*, 390 N.E.2d at 237 (Indiana Dangerous Employment Act); *Parr*, 137 N.E. at 71 (statute conferring a right on all married women to avoid their contracts of suretyship).

for having falsified his height on his employment application. 281 N.E.2d at 912–13. The Safety Board of the City of Evansville had passed a resolution establishing a nine-month probationary period for new fireman appointees and providing that probationers could be denied a permanent appointment without a hearing based on a finding by the board that the probationer's conduct or capacity was not satisfactory. *Id.* at 914. However, the Indiana Court of Appeals held that the probationary firefighter had a protected property interest in his employment, reasoning that the city resolution was trumped by Indiana Code § 18-1-11-3 (the statute prior to the current Ind. Code § 36-8-3-4), which provided, similar to the current statute, that "[e]very member of the fire and police forces. . . shall hold office until they are removed by [the safety] board," that "[t]hey may be removed for any cause other than politics," "after written notice," and "after an opportunity or a hearing is given, if demanded." *Id.* at 913 (quoting Ind. Code § 18-1-11-3). The court reasoned that the city resolution was passed by an administrative tribunal bound by a statute that made no distinction for probationary firemen and that the resolution "tend[ed] to destroy the rather broad protection of the statute." *Id.* at 915.[11]

Although this Court similarly finds that, on the current record, § 36-8-3-4 provides the Plaintiff with a protected property interest in his rank, the reasoning of *Morris* is nevertheless distinguishable for several reasons. First, like *Gansert*, the court in *Morris* considered an initial probationary period of employment rather than the new rank held during a probationary period by a tenured officer at issue in this case. Unlike in *Gansert*, the probationary period in *Morris* was set forth in a city resolution rather than the statute itself. And also unlike *Gansert*, which

---

[11] The chapter currently governing Town Boards of Metropolitan Police Commissioners provides that "the board constitutes the safety board of the town for purposes of the suspension, demotion, or dismissal of any member of the police department," "[p]roceedings for the suspension, demotion, or dismissal of any member of the police department shall be conducted in the manner prescribed by IC 36-8-3-4," and "[t]he board may make general and special rules for the government and discipline of the police department." Ind. Code §§ 36-8-9-4(c), (d).

14

applied the statutory provision on probationary appointments to find no protected property interest in the probationary period, the court in *Morris* found that the statute on tenured employment trumped the city resolution on probationary appointments and found a protected property interest in the probationary period. Second, the decision in *Morris* was based in part on the fact that the tenure statute did not distinguish between probationary and non-probationary employment, whereas the current statute now contains provisions on "probationary appointments" at Indiana Code § 36-8-9-7 (police departments in towns) and § 36-8-4-12 (police and fire departments in cities). *See supra* note 8. Third, the decision in *Morris*, which predates *Roth*, did not consider whether the resolution included any substantive criteria limiting the board's discretion.

Therefore, based on a plain reading of Indiana Code § 36-8-3-4 and the law and facts presented by the parties at this stage of the litigation, the Plaintiff has plausibly alleged a protected property interest in his rank of Corporal during a probationary term. The Court denies the Defendants' motion to dismiss the Plaintiff's Fourteenth Amendment due process claim.[12]

**B.     Title VII Retaliation Claim**

The Plaintiff alleges in Count II that he was retaliated against in violation of Title VII when he engaged in three forms of protected speech: testifying against then co-worker Kilgore in an internal investigatory proceeding, questioning and complaining to superiors regarding Kilgore's subsequent unfair treatment of him, and discussing with other officers a legitimate

---

[12] Based on this ruling, the Court declines to address at this time the Plaintiff's citation of *Pfifer v. Town of Edinburgh*, 684 N.E.2d 57, 582–83 (Ind. Ct. App. 1997), and *Norris v. City of Terre Haute*, 776 N.E.2d 923 (Ind. Ct. App. 2002), for the distinction between "person-directed actions," such as the Plaintiff's demotion in this case, and "position-directed actions," such as when a position is eliminated for economic reasons, in terms of the due process protections afforded by Indiana Code § 36-8-3-4.

conflict of interest involving Kilgore. The Defendants move to dismiss the claim, arguing that the Plaintiff has failed to allege that he engaged in statutorily protected activity.

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). At issue in this case, Title VII also "prohibits an employer from retaliating against an employee for opposing or participating in an investigation of an unlawful employment practice." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (citing 42 U.S.C. § 2000e-3(a); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)). Specifically, Title VII's anti-retaliation provision states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice *by this subchapter*, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this subchapter*." 42 U.S.C. § 2000e-3(a) (emphasis added).

To state a claim of Title VII retaliation, a plaintiff must allege that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse action, and (3) there is a causal link between the two. *See Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023) (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018)); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). On the first element, "[a]n employee engages in a protected activity by either: (1) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or other employment statutes; or (2) opposing an unlawful employment practice." *Alley*, 62 F.4th at 362 (quoting *Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013)).

Here, the Plaintiff has failed to allege a statutorily protected activity within the meaning of Title VII for purposes of his Title VII retaliation claim. The Seventh Circuit Court of Appeals has consistently held that to be a protected activity under Title VII, a complaint to an employer "must indicate the discrimination occurred because of sex, race, national origin, or some other protected class." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (citing *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997)). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Id.* (citing cases); *see also Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016) (explaining that statutorily protected activity "requires more than simply a complaint about some situation at work, no matter how valid the complaint might be"). Said differently, a statutorily protected activity is "some step in opposition to a form of discrimination protected under the statute." *Owens v. Old Wis. Sausage Co.*, 870 F.3d 662, 668 (7th Cir. 2017) (citing *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017)).

The Plaintiff has not alleged that he opposed discrimination based on race, color, religion, sex, or national origin in any of the three instances of speech that form the basis of his Title VII retaliation claim. Although the Plaintiff alleges that he gave testimony in an internal investigation involving Kilgore, the Plaintiff does not allege that the testimony was in opposition to any form of discrimination prohibited under Title VII. Nor does the Plaintiff allege that his communications with superiors or other officers about Kilgore were in opposition to discrimination prohibited under Title VII.

Rather, the Plaintiff reasons that his testimony against Kilgore in the context of an investigation under Indiana Code § 36-8-2.1-5 constitutes participating in an "investigation"

pursuant to an "employment statute" as referenced in the Seventh Circuit's definition of "protected activity" in *Alley* quoted above, which is a direct quote from *Northington*: "an employee engages in a protected activity by . . . filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII *or other employment statutes*." 62 F.4th at 362 (emphasis added) (quoting *Northington*, 712 F.3d at 1065).[13] However, the phrase "other employment statutes" in this definition of "protected activity" appears to refer to other federal employment statutes under which a retaliation claim can be brought, such as the Fair Labor Standards Act (FLSA), the Family Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA), all of which require, like Title VII, a showing that the plaintiff engaged in protected activity. *See, e.g.*, *Dunn v. Hamra Enters.* No. 20 C 04329, 2022 WL 4291028, at *2–3, 4–5 (N.D. Ill. Sept. 16, 2022) (applying *Northington*'s definition of "protected activity" to an FLSA retaliation claim in which the plaintiff complained to his supervisor about the employer's refusal to pay overtime hours in violation of the FLSA and the plaintiff was subsequently terminated); *Davé v. Bd. of Trs. of S. Ill. Univ.*, No. 3:18-CV-2122, 2024 WL 1367238, at *14–15, 18 (S.D. Ill. Mar. 31, 2024) (applying *Northington*'s "protected activity" standard to both a Title VII retaliation claim and an ADEA retaliation claim); *Stedman v. City of Terre Haute*, No.

---

[13] In *Northington*, the plaintiff filed internal complaints and a criminal complaint about a coworker's treatment of her after the coworker found out she and the plaintiff were dating the same other coworker. 712 F.3d at 1063–65. The Seventh Circuit in *Northington* explained that "Title VII protects those actions only if the complaints arose from harassment based on a protected factor." *Id.* at 1065. The court then stated, "An employee engages in a protected activity by either: (1) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or other employment statutes; or (2) opposing an unlawful employment practice." *Id.* The court found that the record showed the coworker's behavior toward the plaintiff did not involve the plaintiff's race or gender but rather was personal and based on their romantic involvement with the same coworker. *Id.* The court held, "Because the harassment itself was not a purported violation of Title VII, [the plaintiff's] complaints do not qualify as alleging a protected activity." *Id.*

18

2:17-CV-398, 2019 WL 2436995, at *4, 6–7 (S.D. Ind. June 11, 2019) (applying *Northington*'s "protected activity" standard to an ADA retaliation claim); *Hamzah v. Woodman's Food Mkt., Inc.*, 13-CV-491, 2016 WL 297748, at *7 (W.D. Wis. Jan. 22, 2016) (finding that the plaintiff could not establish a statutorily protected activity on his Title VII and ADEA claims because his letters did not "make any reference to facts or to his protected status . . . from which one could detect even an implicit reference to discrimination on the basis of his race, ethnicity or age"); *see also Freelain v. Village of Oak Park*, No. 13 CV 3682, 2016 WL 6524908, at *4 (N.D. Ill. Nov. 3, 2016) (finding that the plaintiff had engaged in statutorily protected activity under the FMLA by requesting FMLA leave and by filing charges with the EEOC).

The statute relied on by the Plaintiff as the basis for his Title VII retaliation claim—Indiana Code § 36-8-2.1-5—governs the "rights of officer who is subject of complaint or internal investigation" and is part of Chapter 2.1 on the "Rights of Police Officers." The Plaintiff cites no authority for extending Title VII retaliation protections under 42 U.S.C. § 2000e-3(a) to testimony given in a hearing under a state statute, much less to a state statute that does not address employment discrimination.[14] Notably, federal courts analyze state law employment retaliation claims separately under the applicable state law standard. *See, e.g.*, *Dunn*, 2022 WL 4291028, at *7; *Davé*, 2024 WL 1367238, at *19.

Accordingly, the Court grants the Defendants' motion to dismiss the Plaintiff's Title VII retaliation claim for failure to allege the Plaintiff engaged in an activity protected by Title VII. As a result, the Court does not reach the Defendants' alternate arguments regarding causation.

---

[14] The Indiana Civil Rights Law is found at Indiana Code § 22-9-1-1 et seq.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS in part and DENIES in part the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 33], dismissing the Fifth Amendment due process claim in Count I and the Title VII retaliation claim in Count II. The case remains pending on the Plaintiff's Fourteenth Amendment due process claim in Count I.

SO ORDERED on September 24, 2024.

                                             s/ Theresa L. Springmann  
                                             JUDGE THERESA L. SPRINGMANN  
                                             UNITED STATES DISTRICT COURT